# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**FILED**

DEC - 8 2000

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**DOCKETED**

DEC 1 1 2000

PROFESSIONAL COMPUTER CENTER, INC., )
d/b/a VALCOM, an Illinois Corporation )
                            )
       Plaintiff,                )
                            )
   v.                            )
                            )
SIMON PROPERTY GROUP DELAWARE, INC., )
a Delaware corporation, )
CLIXNMORTAR.COM, INC. )
a Delaware corporation, and )
MERCHANTWIRED, LLC, f/k/a )
TENANTCONNECT.NET LLC, )
a Delaware Limited Liability Company, )
                            )
       Defendants.            )

Case No.: **00C 7723**

Hon. **JUDGE LINDBERG**

**MAGISTRATE JUDGE BOBRICK**

## NOTICE OF REMOVAL

Defendants Simon Property Group Delaware, Inc., Clixnmortar.com, Inc., and MerchantWired, LLC ("Defendants") petition this Court pursuant to 28 U.S.C. § 1441 to remove the above-captioned civil action to this Court. In support thereof, Defendants state as follows:

1.     On or about November 10, 2000, Defendant Simon Property Group Delaware, Inc. was served with Plaintiff's Complaint, Case No. 00L 01092, filed in the Eighteenth Judicial Circuit, DuPage County Illinois.

2.     On or about November 13, 2000, Defendant Clixnmortar.com, Inc. was served with Plaintiff's Complaint, Case No. 00L 01092, filed in the Eighteenth Judicial Circuit, DuPage County Illinois.

3.     On or about November 20, 2000, Defendant MerchantWired, LLC was served with Plaintiff's Complaint, Case No. 00L 01092, filed in the Eighteenth Judicial Circuit, DuPage County Illinois.

4.      This Notice is being filed within thirty (30) days after Defendants were served with Plaintiff's initial pleading and is therefore timely and proper pursuant to the provisions of 28 U.S.C. § 1446(b).

5.      Pursuant to 28 U.S.C. § 1446(a), Defendants attach as Exhibits 1-4 copies of all process, pleadings, orders and other papers of every kind served upon them.

6.      Plaintiff Professional Computer Center, Inc. asserts claims of breach of contract, account stated, and quantum meruit against Defendants, and seeks relief including damages, attorneys' fees, pre-judgment interest, and costs.

7.      This action is wholly between citizens of different states. Plaintiff Professional Computer Center, Inc. is a corporation, incorporated under the laws of the State of Illinois, with its principal place of business in Itasca, DuPage County, Illinois. (Complaint ¶ 1.) Defendant Simon Property Group Delaware, Inc. is, and was at all relevant times, a corporation, incorporated under the laws of the State of Delaware with its principal place of business located in Indianapolis, Indiana. (Complaint ¶ 3.) Defendant Clixnmortar.com, Inc. is, and was at all relevant times, a corporation, incorporated under the laws of the State of Delaware with no registration to do business in the State of Illinois. (Complaint ¶ 4.) Defendant MerchantWired LLC is, and was at all relevant times, organized under the laws of the State of Delaware. (Complaint ¶ 5.)

8.      Plaintiff's Complaint, Count I, requests relief against Defendants "in an amount not less than $185,000.00 plus its reasonable attorney's fees, pre-judgment interest and costs." (Complaint ¶ 38A.) Plaintiff's Complaint, Counts II and III, requests relief "in the amount of $159,850.00 plus reasonable attorney's fees, pre-judgment interest and costs." (Complaint ¶¶ 41B & 8B.) Thus, the relief Plaintiff seeks against Defendants exceeds the jurisdictional minimum amount of $75,000, exclusive of interest and costs.

CH - 1135165

9.     Accordingly, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, and this action may be properly removed to this Court pursuant to 28 U.S.C. § 1441(a).

10.     Written notice of filing of this Notice of Removal together with a copy of the Notice of Removal will be given to Plaintiff and will be filed with the Circuit Court of DuPage County, Illinois, pursuant to 28 U.S.C. § 1446(d).

Date:    December 8, 2000

Respectfully submitted,

Thomas P. McNulty
Stacy A. Baim
JONES, DAY, REAVIS & POGUE
77 West Wacker
Chicago, Illinois  60601-1692
(312) 782-3939
ATTORNEYS FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

Service of Defendants' Notice of Removal was made via United States Postal

Service on this 8th day of December, 2000, addressed to:

Eric A. Burgeson
FUCHS & ROSELLI, LTD.
311 S. County Farm Road, Suite A
Wheaton, Illinois 60187

# EXHIBIT 1

UNITED STATES OF AMERICA

**STATE OF ILLINOIS**

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**

**COUNTY OF DU PAGE**

*10.50*

*11/10/00*

Professional Computer Center, Inc. d/b/a
ValCom, an Illinois corporation,

                    Plaintiffs

Vs.

Simon Property Group Delaware, Inc., a
Delaware corporation; Clixnmortar.com,
Inc., a Delaware corporation; and
Merchantwired, LLC f/k/a Tenantconnect.net,
LLC, a Delaware Limited Liability Company,
                    Defendants.

CEL 0109Γ 2

Case Number

File Stamp Here

## SUMMONS

To each Defendant: Simon Property Group Delaware, Inc., c/o CT Corporation System,
          208 S. LaSalle Street, Chicago, Illinois 60604-1136

    You are summoned and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance in the office of the Clerk of this court, 505 North County Farm Road, Wheaton, Illinois, within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

To the Officer:

    This summons must be returned by the Officer or other person to whom it was given for service, with endorsement of service and fees, if any immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

WITNESS

**JOEL A. KAGANN**, Clerk of the Eighteenth Judicial Circuit, and the seal thereof, at Wheaton Illinois. Dated   NOV - 3 2000

JOEL KAGANN, Circuit Court Clerk

Eric A. Burgeson/Fuchs & Roselli, Ltd.
Plaintiff's Attorney

CLERK of the EIGHTEENTH JUDICIAL CIRCUIT

24325
DuPage Attorney Number

311 S. County Farm Road, Suite A   NOTE:
Street Address

The filing of an appearance or answer with the Circuit Court Clerk requires a statutory filing fee, payable at the time of filing.

Wheaton, IL 60187
Town

(630) 668-5050
Telephone Number

Date Of Service_____ 19 _____
    (To be inserted by officer on copy left with defendant or other Person.)

CIRCUIT COURT SUMMONS

**JOEL A. KAGANN, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT**
**WHEATON, ILLINOIS 60189-0707**

# EXHIBIT 2

# UNITED STATES OF AMERICA

**STATE OF ILLINOIS**

**COUNTY OF DU PAGE**

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT

Professional Computer Center, Inc. d/b/a
ValCom, an Illinois corporation,

        Plaintiffs

      Vs.

Simon Property Group Delaware, Inc., a
Delaware corporation; Clixnmortar.com,
Inc., a Delaware corporation, and
Merchantwired, LLC f/k/a Tenantconnect.net,
LLC, a Delaware Limited Liability Company,

        Defendants.

OOL 0103I

Case Number

File Stamp Here

## SUMMONS

To each Defendant: Clixnmortar.com, Inc., 10255 W. Higgins, Suite 820
                      Rosemont, Illinois 60018

You are summoned and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance in the office of the Clerk of this court, 505 North County Farm Road, Wheaton, Illinois, within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

To the Officer:

This summons must be returned by the Officer or other person to whom it was given for service, with endorsement of service and fees, if any immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

WITNESS

**JOEL A. KAGANN**, Clerk of the Eighteenth Judicial Circuit, and the seal thereof, at Wheaton Illinois. Dated _____ NOV -3 2000

Eric A. Burgeson/Fuchs & Roselli, Ltd.
Plaintiff's Attorney

*JOEL KAGANN*, Circuit Court Clerk
CLERK of the EIGHTEENTH JUDICIAL CIRCUIT

24325
DuPage Attorney Number

311 S. County Farm Road, Suite A
Street Address

NOTE:

Wheaton, IL 60187
Town

The filing of an appearance or answer with the Circuit Court Clerk requires a statutory filing fee, payable at the time of filing.

(630) 668-5050
Telephone Number

Date Of Service _11-13- 2000_
(To be inserted by officer on copy left with defendant or other Person.)

CIRCUIT COURT SUMMONS

**JOEL A. KAGANN, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT
WHEATON, ILLINOIS 60189-0707**

# EXHIBIT 3

*11/20/2000*
*10:10 am*

81-101 (Rev. 10/91)

**STATE OF ILLINOIS** ⌣ **UNITED STATES OF AMERICA** ⌣ **COUNTY OF DU PAGE**

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT

Professional Computer Center, Inc. d/b/a
ValCom, an Illinois corporation,

                       Plaintiffs

               Vs.

Simon Property Group Delaware, Inc., a
Delaware corporation; Clixnmortar.com,
Inc., a Delaware corporation, and
Merchantwired, LLC f/k/a Tenantconnect.net,
LLC, a Delaware Limited Liability Company,
                 Defendants.

Case Number    01024 2

*File Stamp Here*

## SUMMONS

To each Defendant: Merchantwired, LLC, c/o The Corporation Trust Company, Corporation
                Trust Center, 1209 Orange Street, Wilmington, DE  19801

     You are summoned and required to file an answer to the complaint in this case, a copy of which is hereto
attached, or otherwise file your appearance in the office of the Clerk of this court, 505 North County Farm Road,
Wheaton, Illinois, within 30 days after service of this summons, not counting the day of service. IF YOU FAIL TO
DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN
THE COMPLAINT.

To the Officer:

     This summons must be returned by the Officer or other person to whom it was given for service, with endorsement
of service and fees, if any immediately after service. If service cannot be made, this summons shall be returned so endorsed.

                                This summons may not be served later than 30 days after its date.

                     WITNESS      **JOEL A. KAGANN**, Clerk of the Eighteenth
                                     Judicial Circuit, and the seal thereof, at Wheaton
                                     Illinois.  Dated _____

                                        NOV – 3 2000
                                 *JOEL KAGANN, Circuit Court Clerk*

Eric A. Burgeson/Fuchs & Roselli, Ltd.
Plaintiff's Attorney                              CLERK of the EIGHTEENTH JUDICIAL CIRCUIT

24325
DuPage Attorney Number

311 S. County Farm Road, Suite A  NOTE:      The filing of an appearance or answer with the Circuit
Street Address                                   Court Clerk requires a statutory filing fee, payable at

Wheaton, IL 60187                         the time of filing.
Town

(630) 668-5050
Telephone Number             Date Of Service _____ 19 _____
                       (To be inserted by officer on copy left with defendant or other Person.)

EXHIBIT 4

# IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## DUPAGE COUNTY, ILLINOIS

PROFESSIONAL COMPUTER CENTER, INC.,
D/B/A VALCOM, AN ILLINOIS CORPORATION,

    *Plaintiff,*

    v.

SIMON PROPERTY GROUP DELAWARE, INC.,
A DELAWARE CORPORATION, CLIXNMORTAR.COM ,
INC., A DELAWARE CORPORATION, and
MERCHANTWIRED, LLC F/K/A TENANTCONNECT.NET,
LLC, A DELAWARE LIMITED LIABILITY COMPANY,

    *Defendants.*

No. C̲ L̲ 0100<u>1</u>



## VERIFIED COMPLAINT

NOW COMES Plaintiff, PROFESSIONAL COMPUTER CENTER, INC. D/B/A VALCOM, AN ILLINOIS CORPORATION, ("PCC"), by and through its attorneys, Fuchs & Roselli, Ltd., and for its Verified Complaint against Defendants, SIMON PROPERTY GROUP DELAWARE, INC. ("SIMON"), CLIXNMORTAR.COM, INC., ("CLIXNMORTAR"), AND MERCHANTWIRED, LLC F/K/A TENANTCONNECT.NET, LLC, A DELAWARE LIMITED LIABILITY COMPANY ("MERCHANTWIRED") (collectively "DEFENDANTS"), states as follows:

### COUNT I – BREACH OF CONTRACT

1.    PCC is an Illinois corporation with its principal place of business located in Itasca, DuPage County, Illinois.

2.    PCC is in the business of providing technology management services, including but not limited to the sale of computers, hardware, software as well as consulting services.

3.    Upon information and belief, SIMON is a Delaware corporation with its headquarters located in Indianapolis, Indiana and, among other things, manages, controls, and/or

operates Clixnmortar.com and Merchantwired. SIMON is also registered to do business in the State of Illinois.

4. Upon information and belief, CLIXNMORTAR is a Delaware corporation, which at or about the time relevant hereto, maintained an office in the State of Illinois although this entity is not registered to do business in the State of Illinois.

5. Upon information and belief, MERCHANTWIRED is a Delaware corporation.

6. In mid to late 1999, PCC began working with representatives of the DEFENDANTS. During that time, Robert Covington, an officer of DEFENDANTS and acting on behalf of all of the DEFENDANTS, began working with PCC and its employee John Chirillo ("CHIRILLO"). CHIRILLO is a Senior Internetworking Engineer who performed various services as an employee of PCC for the DEFENDANTS.

7. Mr. Covington, on a number of occasions in the last calendar quarter of 1999, made favorable comments about the work effort of CHIRILLO. During the same time period, Covington approached PCC and asked PCC to develop a long-term agreement for CHIRILLO'S services. He proposed a one-year contract under CLIXNMORTAR although services were to be performed (and were performed) on behalf of all DEFENDANTS.

8. Covington was very clear that his request was specifically for the services of CHIRILLO as a PCC employee and tied to CHIRILLO's continued employment with PCC.

9. Covington specifically requested that one hundred percent (100%) of CHIRILLO's working time be dedicated to DEFENDANTS.

2

10. At that point in time, Covington was not clear as to the specific tasks that would be required so a contract was prepared providing that the tasks to be performed by PCC's employee would be as directed by DEFENDANTS' management.

11. Therefore, in January, 2000, PCC and CLIXNMORTAR (on behalf of all DEFENDANTS) entered into a contract for the full-time services of CHIRILLO for the calendar year 2000, at a set price of $200.00 per hour. A copy of the contract is attached hereto and incorporated herein as Exhibit A.

12. CLIXNMORTAR also entered into a Master Service Agreement with PCC, a copy of which is attached and made a part hereof as Exhibit B. The contract was signed on or about June 5, 2000 by Robert Covington, of behalf of CLIXNMORTAR, with the Agreement to be effective as of January 24, 2000.

13. Covington also signed Master Service Agreements with PCC on behalf of the other Defendants, SIMON and MERCHANTWIRED. Those contracts are attached hereto and made a part hereof as Exhibits C and D, respectively. Those Agreements were also effective as of January 24, 2000.

14. During the period of time between January 1 and March 31, 2000, CHIRILLO worked on a series of projects for the various DEFENDANTS, all under the supervision of Covington and his management team.

15. PCC management was advised that the DEFENDANTS were exceedingly pleased with the performance of CHIRILLO.

16. On or about March 28, 2000, PCC, for the first time, received feedback from another representative of DEFENDANTS, Alex Carroll, who at the time was an independent

3

consultant for DEFENDANTS, not an employee, indicating that he was concerned about that which CHIRILLO was working on.

17.    Carroll requested that PCC conduct a review of CHIRILLO's time records. PCC immediately complied. During the investigation, PCC received notice from Covington, who was Carroll's superior in the DEFENDANTS' organization, stating unambiguously that there was no need for the review, to take no further action and to "leave it alone."

18.    PCC management ceased its review of the time cards, but did attempt to contact Covington by telephone to ensure that Covington was comfortable with the way things were going. Covington did not respond to telephone messages.

19.    PCC management then contacted Alex Carroll and asked if there was another method to communicate with Covington, advising him that Covington did not respond to telephone messages and PCC was advised that e-mail communication was better.

20.    PCC management then attempted to contact Covington via e-mail. Covington did not respond.

21.    PCC management continued to attempt to contact Covington but was completely unsuccessful.

22.    During all of the attempts at communication, CHIRILLO continued to work as directed by Covington.

23.    During the summer of 2000, PCC was first notified by CHIRILLO that DEFENDANTS were challenging some of the invoices submitted for CHIRILLO's time.

24.    PCC then requested of Alex Carroll (the only person from whom PCC could obtain any communication) a written statement indicating any complaints that there might be

4

with regard to CHIRILLO. Carroll had no direct input as to CHIRILLO's activities and was not an employee of DEFENDANTS so PCC requested a written document from someone at DEFENDANTS' organization who actually worked with CHIRILLO. PCC reiterated its request to speak with Covington, who was directing CHIRILLO's work.

25.     Prior to October, 2000, PCC never received any written communication from DEFENDANTS as to alleged problems with CHIRILLO's work. Neither was PCC able to reach Covington, who ignored numerous phone calls and e-mails.

26.     On or about July 13, 2000, PCC management sent a letter to Covington attempting to determine what complaints, if any, there were concerning CHIRILLO's work and why the invoices were not paid. DEFENDANTS did not respond. A copy of the July 13, 2000 letter is attached hereto and made a part hereof as <u>Exhibit E</u>.

27.     On or about August 10, 2000, Charles Birmingham, the President of PCC, sent a letter to DEFENDANTS requesting reasons, if any, for nonpayment of the invoices and seeking to resolve any open issues. DEFENDANTS did not respond. A copy of the August 10, 2000 letter is attached hereto and made a part hereof as <u>Exhibit F</u>.

28.     On or about August 29, 2000, PCC again tried to contact DEFENDANTS, escalating the issue to Covington's supervisors. Again, no response was received from the DEFENDANTS. A copy of the August 29, 2000 letter is attached hereto as <u>Exhibit G</u>.

29.     In September, 2000, in an effort to resolve the issue amicably, PCC attempted to set up a meeting with Covington, Alex Carroll and Covington's supervisors. PCC was willing to meet in Indianapolis or anywhere to try to find out why there was a problem in obtaining

5

payment. The meeting was finally scheduled through Alex Carroll, who was the only individual who would respond. At the last moment, Alex Carroll left a message canceling the meeting.

30.     Over the following weeks, Charles Birmingham of PCC left at least three separate messages attempting to reschedule the meeting. DEFENDANTS did not even have the courtesy to respond.

31.     Finally, on or about October 2, 2000, a demand letter was sent by PCC's counsel, demanding the payment of the invoices.

32.     Invoices through August 31, 2000 which are unpaid total the amount of $159,850.00.

33.     Despite PCC's repeated attempts to obtain payment of the balance due, DEFENDANTS continue to fail to pay.

34.     PCC is entitled to additional lost profits for services which were to be provided under Exhibit A from September 1, 2000 through December 31, 2000 in an amount in excess of $25,000.00.

35.     PCC has performed all of its obligations under the contract.

36.     PCC has attempted to mitigate its damages but has been unable to find replacement work for CHIRILLO's time.

37.     Pursuant to 815 ILCS 205/2, PCC is entitled to pre-judgment interest of 5% per annum for DEFENDANTS' vexatious and unreasonable delay in payment.

38.     Pursuant to Paragraph 13(h) of Exhibit A, PCC is entitled to its reasonable attorney's fees and expenses incurred herein.

6

**WHEREFORE,** Plaintiff, PROFESSIONAL COMPUTER CENTER, INC. D/B/A VALCOM, prays for the following relief:

A.     For an order entering judgment in favor of Plaintiff and against Defendants, jointly and severally, in an amount not less than $185,00.00 plus its reasonable attorney's fees, pre-judgment interest and costs; and

B.     For such other and further relief as this Court deems appropriate.

### COUNT II – ACCOUNT STATED

1-38.     PCC realleges paragraphs 1 through 38 of Count I as paragraphs 1 through 38 of Count II as if fully set forth herein.

39.     PCC has invoiced DEFENDANTS the amount due and owing on the account.

40.     DEFENDANTS have not disputed or otherwise objected to the amount thereby acquiescing and agreeing to the account stated between the parties.

41.     The account stated between the parties is $159,850.00.

**WHEREFORE,** Plaintiff Professional Computer Center, Inc. d/b/a ValCom, prays for the following relief:

A.     For an order entering judgment in favor of Plaintiff and against Defendants in the amount of $159,850.00 plus reasonable attorney's fees, pre-judgment interest and costs; and

B.     For such other and further relief as this Court deems appropriate and just.

### COUNT III – QUANTUM MERUIT

1-5.     PCC realleges paragraphs 1 through 5 of Count I as paragraphs 1 through 5 of Count III as if fully set forth herein.

7

6. PCC through CHIRILLO performed various computer services and labor at the direction and special instance of DEFENDANTS.

7. DEFENDANTS received the benefit of the services provided by PCC through CHIRILLO and have failed to pay PCC the reasonable value of those services valued at $159,850.00.

8. PCC has made repeated demands upon DEFENDANTS to pay PCC the balance due and owing. DEFENDANTS have failed and refused to pay PCC the balance due and owing.

WHEREFORE, Plaintiff Professional Computer Center, Inc. d/b/a ValCom, prays for the following relief:

A. For an order entering judgment in favor of Plaintiff and against Defendants in the amount of $159,850.00 plus reasonable attorney's fees, pre-judgment interest and costs; and

B. For such other and further relief as this Court deems appropriate and just.

Respectfully submitted,

PROFESSIONAL COMPUTER CENTER, INC., *Plaintiff*

By: _Mark W Ing_

One of its attorneys

Mark H. Schiff
Steven M. Ruffalo
Eric A. Burgeson
FUCHS & ROSELLI, LTD.
311 S. County Farm Road, Suite A
Wheaton, Illinois 60187
(630) 668-5050
Attorney No. 24325

8

## VERIFICATION

CHARLES BIRMINGHAM, being first duly sworn on oath, deposes and states that he is the President of PROFESSIONAL COMPUTER CENTER, INC. D/B/A VALCOM; that he is duly authorized to execute this Verification on its behalf; that he has read the above and foregoing Verified Complaint; and that the allegations contained therein are true to the best of his knowledge, information and belief.

CHARLES BIRMINGHAM, President

SUBSCRIBED and SWORN to before
me this 2ND day of NOVEMBER, 2000

NOTARY PUBLIC

```
OFFICIAL SEAL
TERESA LUKASIK
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-24-2004
```

9

## AFFIDAVIT RE: DAMAGES SOUGHT

CHARLES BIRMINGHAM, being first duly sworn on oath, deposes and states that he is the President of PROFESSIONAL COMPUTER CENTER, INC. D/B/A VALCOM; that he is duly authorized to execute this Affidavit on its behalf; and that the damages sought in the above-referenced matter -- excluding interest, attorney's fees and costs -- exceeds $50,000.00.

CHARLES BIRMINGHAM, President

SUBSCRIBED and SWORN TO before
me this 20n day of NOVEMBER, 2000

NOTARY PUBLIC

OFFICIAL SEAL
TERESA LUKASIK
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-24-2004

10



*Professional Services for Clix'nmortar.com:*

# clix**n**mortar.com

*Contact:* Alex Carroll
(317) 590-0589
Email: acarroll@simon.com

## On-site Support
## John Chirillo

Prepared By: Dennis Cornelius
PH:(630) 285-6876
Fax:630-285-2513
Account Manager: Tim Goss
PH:(630) 285-6505
December 20, 1999



PLAINTIFF'S
EXHIBIT

_A_

*ValCom Professional Computer Center, Inc.*
*1433 Hamilton Parkway, Itasca IL. 60143*
*October 28, 1999, Microsoft Cluster Software Installation , Page 1 of 8*

*Rev. 8/6/99*



## Professional Services for Clix'nmortar.com:

### Client Data

Client:   *Clix'nmortar.com*
             10255 W. Higgins Rd.
             Rosemont, IL. 60017

Contact: Alex Carroll
Phone: (317) 590-0589
E-mail: acarroll@simon.com

ValCom Professional Computer Center, Inc. d/b/a ValCom and *Clix'nmortar.com* agree as follows:

# Conditions of Proposal

ValCom Professional Computer Center, Inc. respectfully requests that *Clix'nmortar.com*, observes the terms of the following paragraph:

> *Clix'nmortar.com agrees that this proposal document, shall, unless otherwise expressly provided in writing by a duly authorized officer of ValCom Professional Computer Center, Inc., not be disclosed by Clix'nmortar.com outside of Clix'nmortar.com's operation (except and to the extent required to comply with applicable law, and then only upon written notice to ValCom) and be made available within Clix'nmortar.com's operation only to those employees of Clix'nmortar.com who may be working on this project.*

This proposal, when executed by both parties shall constitute the only legally binding commitment of the parties.

The pricing for this ValCom service is standard pricing based on a stable network and PC environment. Additional time required to resolve existing network or workstation problems or incompatibilities are out of the scope of this agreement and will be billed at an hourly rate of $200.00 ($300.00 after 5:00PM and Saturdays) per hour plus the cost of parts to fix the problem. This includes but is not limited to; cable problems, intermediate upgrades required to bring a network or O/S up to specifications prior to a final upgrade, memory management and incompatible hardware or software.

# Project Overview

ValCom understands that *Clix'nmortar.com's* immediate and primary needs are the following, based upon a telephone conversation between Alex Carroll representing *clix'nmortar.com* and Dennis Cornelius of ValCom PCC staff.

Stated requirements are as follows:

*On-site support and commitment of John Chirillo (a Senior Internetworking Engineer for ValCom), for a period of one year.*

**ValCom Professional Computer Center, Inc.**
**1433 Hamilton Parkway, Itasca IL. 60143**
**October 28, 1999, Microsoft Cluster Software Installation , Page 2 of 8**

*Rev. 8/6/99*



*Professional Services for Clix'nmortar.com:*

# Statement Of Work

## Commitment:

During the calendar year 2000, from Jan 1,1999 to December 31, 2000, as long as John Chirillo is in the employment of ValCom PCC, he will be committed to the clix'nmortar.com account for this period.

- ValCom will commit John Chirillo for a period of one year to the clix'nmortar.com account. John's sole duties for the indicated period will be in support of clix'nmortar.com and related companies.
- Clix'nmortar.com will commit to maintaining John Chirillo as a full time billable resource for the same period as described above.

## Assumptions:

- This commitment assumes John Chirillo remains an employee of ValCom PCC.
- John can be removed from the account assuming both clix'nmortar.com and ValCom PCC agree in writing.
- The current hourly levels for billing will remain intact throughout the indicated period. With the exception being that we will invoice Clix'nMorter for one and a half times the normal rate (overtime rate), for hours exceeding 40 hours per week.

*ValCom Professional Computer Center, Inc.*
*1433 Hamilton Parkway, Itasca IL. 60143*
*October 28, 1999, Microsoft Cluster Software Installation , Page 3 of 8*

*Rev. 8/6/99*



## Professional Services for Clix'nmortar.com:

# Terms and Conditions

1.      **Terms.**  Unless otherwise specified in writing, the parties agree that the terms of this Agreement will apply to all future dealings between them whether or not such dealings are encompassed by the work described in the Proposal.

2.      **Independent Contractor.**  The relationship of VALCOM to Customer is one of an independent contractor and nothing in this Agreement shall be construed to imply that VALCOM or its employees are agents or employees of Customer, for any purpose, including, but not limited to, withholding of social security or state and/or federal income tax or entitlement to employee benefits of Customer.  VALCOM will be solely responsible for payment of any and all taxes and insurance, including workers compensation, for its employees who perform any Services pursuant to this Agreement.

3.      **Ownership Rights in Data.**  VALCOM does not convey nor does Customer obtain any right or interest in any of the programs, systems, data or materials utilized or provided by VALCOM in connection with the performance of this Agreement unless otherwise specifically set forth in writing.

4.      Client agrees during the term of this Agreement and for a period of one (1) year after its termination, not to solicit, directly or indirectly (through individuals, subsidiaries, holding companies, partnerships, subcontractors or any other financially related firms), nor to tender an offer for employment nor place on their payrolls any employee who is or was, within ninety days prior to the time of such solicitation, offer or employment, on ValCom's payroll.  In the event Client hires or contracts with a ValCom employee in violation of the terms of this paragraph, the Client agrees to pay ValCom as liquidated damages, and not as a penalty, an amount equal to one half of the employee's annual compensation, including but not limited to wages, bonuses and fringe benefits. This provision for liquidated damages shall not limit remedies against the Client for any other breach of this Agreement.

   (a)      Client will require all agencies and/or subcontractors working on Client's premises with ValCom employees to execute a document indicating their Agreement to the terms of this paragraph.

   (b)      In the event of a violation of this provision by a subcontractor or other third party on Client's premises,  Client agrees not to use the services of such individual(s) hired by such subcontractor or third party.

5.      **Warranties.**  VALCOM warrants that, in performing the Services:

   (a)      The Services will reasonably conform to the descriptions set forth in the Proposal within thirty (30) days of completion of the Services.  Customer shall execute a Certification of Acceptance providing, among other things, that the Services furnished by VALCOM hereunder are in accordance with the Proposal and acceptable to customer;

   (b)      VALCOM will transfer or assign to Customer any available and assignable product warranties of manufacturers and/or suppliers for any equipment or product purchased by Customer and furnished by VALCOM pursuant to this Agreement.  VALCOM makes no warranties concerning equipment or product supplied to Customer under this Agreement, and all product and equipment furnished by VALCOM is on an "as is" basis. The products sold by VALCOM are subject to certain warranties which may be offered by the respective manufacturers of such items. As VALCOM is not a manufacturer, VALCOM does not offer any independent warranties on items

*ValCom Professional Computer Center, Inc.*
*1433 Hamilton Parkway, Itasca IL. 60143*
*October 28, 1999, Microsoft Cluster Software Installation , Page 4 of 8*

*Rev. 8/6/99*


that are purchased from VALCOM. As such, in connection with the purchase or servicing of any products, software or hardware. VALCOM offers no warranties either on the products themselves or as to whether the items, regardless of any services performed by VALCOM, are designed to be utilized prior to, during and after the year 2000 or as to any issue arising out of year 2000 compatibility.

THE FOREGOING WARRANTIES IN THIS PARAGRAPH 5 ARE EXCLUSIVE AND ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR USE FOR A PARTICULAR PURPOSE OR YEAR 2000 COMPATIBILITY. VALCOM'S LIABILITY UNDER THIS WARRANTY SHALL NOT INCLUDE ANY LIABILITY FOR SPECIAL, DIRECT, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, ARISING FROM THE SERVICES, INCLUDING, BUT NOT LIMITED TO, ANY PRODUCT, GOODS OR SERVICES SUPPLIED OR INSTALLATION THEREOF. IN NO EVENT SHALL VALCOM BE LIABLE FOR ANY LOST PROFITS OR SALES OF CUSTOMER, AND VALCOM'S LIABILITY UNDER ANY THEORY OF LAW SHALL NOT EXCEED THE AMOUNTS RECEIVED BY VALCOM FROM CUSTOMER PURSUANT TO THIS AGREEMENT.

6.      Liability. VALCOM'S entire liability and Customer's exclusive remedy for damages from any cause or source whatsoever, including, but not limited to, nonperformance or misrepresentation, and regardless of the form of action, shall be limited to a refund of the price paid by Customer for the specific products or services that caused the damages or claims that are the subject matter of, or indirectly related to, the cause of action. In no event will VALCOM be liable for damages caused by Customer's negligence, or for any lost profits, lost savings or other incidental or consequential damages, even if VALCOM has been advised of the possibility of such damages, or for any claim against Customer by any other party.

7.      Termination.

(a)      Either party may terminate this Agreement with 30 days of prior written notice to the other.

(b)      Default. In the event all sums due pursuant to this Agreement are not paid as set forth herein, VALCOM shall have option to terminate this Agreement immediately upon written notice to Customer.

(c)      Acts of Insolvency. VALCOM shall have the option to terminate this Agreement by written notice to Customer and to regard the Customer as being in material default of this Agreement, if Customer becomes insolvent, makes a general assignment for the benefit of creditors, files a voluntary petition for bankruptcy, suffers or permits the appointment of a receiver for its business or assets, or becomes subject to any proceeding under any bankruptcy or insolvency law, whether domestic or foreign, or has wound up its business or liquidated, voluntarily or otherwise. In the event that any of the above events occurs, Customer shall immediately notify VALCOM in writing of such occurrence.

(d)      Force Majeure; Suspension and Termination. In the event that either party is unable to perform any of its obligations under this Agreement, or to enjoy any of its benefits because of (or failure to perform the Services is caused by) natural disaster, actions or decrees of governmental bodies or communication line failure, or any inability to perform which is not the failure of the affected party (hereinafter referred to as a "Force Majeure Event"), the party who has been so affected shall immediately give notice to the other party and shall do everything possible to resume performance. Upon receipt of such notice, all obligations under this Agreement shall be immediately suspended. If the period of non-performance exceeds thirty (30) days from the receipt of notice of the Force Majeure Event, the party whose ability to perform has not been so affected may terminate this Agreement, by giving written notice to the other party.

(e)      Rights and Obligations of the Parties on Termination. Upon termination of this Agreement based on a material breach or default by Customer, VALCOM shall be entitled to retain payments received to date of

*ValCom Professional Computer Center, Inc.*
*1433 Hamilton Parkway, Itasca IL. 60143*
*October 28, 1999, Microsoft Cluster Software Installation , Page 5 of 8*

*Rev. 8/6/99*



## Professional Services for Clix'nmortar.com:

default or breach, as well as retain (including a demand to Customer for return of all data, manuals, materials, equipment and other items provided to Customer as part of the Services under this Agreement, which have not been fully paid for by Customer at the time of termination and, in addition, shall have all other legal rights and remedies available as a result of such breach.

8.    Confidential and Proprietary Information: Publicity:

(a)    Confidential and Proprietary Information. Customer acknowledges and agrees that any and all information concerning VALCOM business disclosed in the course of performance of the Services under this Agreement is "Confidential and Proprietary Information", and Customer agrees that it will not permit the duplication, use or disclosure of any such Confidential and Proprietary Information to any person (other than its own employee, agent or representative who must have such information for the performance of services hereunder), unless such duplication, use or disclosure is specifically authorized in advance in writing by VALCOM. "Confidential and Proprietary Information" is not meant to include any information which, at the time of disclosure, is generally known by the public or any competitors of Customer or VALCOM, but Customer shall have the burden of establishing that any information sought to be disclosed to third persons or entities is not subject to this provision of non-disclosure.

(b)    Publicity; Trademarks.  Neither party shall use the name(s), trademark(s) or trade name(s) (whether registered or not), of the other party in publicity releases or advertising or in any other manner, including customer lists, without securing the prior written approval of the other party.

9.    Indemnification. Customer does hereby indemnify and shall hold harmless (including reasonable attorney's fees), VALCOM, its corporate affiliates and any employee or agent thereof (each of the foregoing being hereinafter referred to individually as "Indemnified Party"), against all liability to third parties (other than liability solely the fault of the Indemnified Party) arising from or in connection with the violation of any third party's trade secrets, proprietary information, trademarks, copyright, or patent rights in connection with the performance of Services under this Agreement. The obligation to indemnify any Indemnified Party will survive the expiration or termination of this Agreement by either party for any reason. The Indemnifying Party may, at its option, conduct the defense in any such third party action arising as described herein and the Indemnified Party promises fully to cooperate with such defense.

10.    Taxes. Customer shall be responsible for the payment of all taxes imposed in connection with or as a result of this Agreement.

11.    Assignment.  Neither party shall assign or subcontract all or any part of this Agreement without the other party's prior written consent, however VALCOM may use qualified temporary help or subcontractors to assist in performance of its obligations under this Agreement.

12.    Applicable Law. This Agreement shall be governed by the laws of the State of Illinois.

13.    Miscellaneous.

(a)    Remedies.  All remedies available to VALCOM for breach of this Agreement are cumulative and may be exercised concurrently or separately, and the exercise of any one remedy shall not be deemed an election of such remedy to the exclusion of other remedies.

(b)    Notices.  Notice shall be given to the parties at their respective address as stated herein, by First Class United States Mail, postage prepaid.

*ValCom Professional Computer Center, Inc.*
*1433 Hamilton Parkway, Itasca IL. 60143*
*October 28, 1999, Microsoft Cluster Software Installation , Page 6 of 8*

*Rev. 8/6/99*



# Professional Services for Clix'nmortar.com:

(d) Waiver. No term or provision hereof shall be deemed waived and no breach excused unless such waiver or consent shall be in writing and signed by the party claimed to have waived or consented.

(e) Site of Services. If VALCOM's services are performed at Customer's offices. Customer shall provide office space and facilities to VALCOM's staff commensurate with that provided to its own employees to the extent necessary to perform the Services.

(e) Modifications. If the Customer requests in writing any modification of the Services, VALCOM may perform such services at its sole discretion. If VALCOM so performs. Customer agrees that VALCOM may expend the time VALCOM deems reasonable and necessary to perform the modified Services and the charges for such modified Services shall be on a time and materials basis at VALCOM's hourly rates and charges then in effect, unless otherwise agreed to in writing by the parties.

(f) Prior Negotiations. This Agreement constitutes the entire understanding of the parties and supersedes any and all prior or contemporaneous representations or agreements, written or oral, by the parties, and cannot be changed or modified unless in writing signed by the parties.

(g) Severability. If any part of this Agreement is found to be in violation of any law or is found to be otherwise unenforceable, this Agreement shall be construed and interpreted without reference to such part.

(h) Attorney's Fees. In the event that either party commences a proceeding to construe or determine the rights and obligations of the parties pursuant to this Agreement, or a breach thereof, the prevailing party shall be entitled to recover from the other party all reasonable attorney's fees and expenses incurred in obtaining a declaration or enforcement of rights and obligations or determining a breach by the other party under this Agreement.

## Clix'nmortar.com Acceptance

Client Representative: _____  Date: 1/20/00

Title: Robert D. Covington

P.O. #: RDCCLX012000A

ValCom/PCC Representative: Don L. Conley  Date: 1/20/00

Title: DIR of Professional Services

**ValCom Professional Computer Center, Inc.**
**1433 Hamilton Parkway, Itasca IL. 60143**
**October 28, 1999, Microsoft Cluster Software Installation , Page 7 of 8**

Rev. 8/6/99

# MASTER
# SERVICE AGREEMENT

THIS MASTER SERVICE AGREEMENT ("AGREEMENT") is made and entered into by and between Professional Computer Center. Inc., d/b/a ValCom. an Illinois corporation. located at 1433 Hamilton Parkway, Itasca. Illinois 60143, and clixnmortar.com, inc. ("Client"). located at 10255 W. Higgins Rd., Suite 820, Rosemont, IL 60018.

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein. the parties hereby agree as follows:

### 1.    Services

The date of service, equipment covered, definition of services, terms, (terms and conditions below as well) for this Agreement are identified in the attached Exhibits.

### 2.    Term

This Agreement shall be effective 1/31/00. The initial term of this Agreement shall be for 12 months following the date service begins. Following the initial term, this Agreement shall continue in effect for successive 12 month periods unless terminated by either Party pursuant to paragraph 11, with or without cause, by providing at least thirty (30) days written notice.

### 3.    Place for Service

ValCom shall perform services at location(s) listed in the attached Exhibits.

### 4.    Time/Days for Service

ValCom agrees to provide services identified in the attached Exhibits during local service hours of 8:00 a.m. to 5:00 p.m., central time, Monday through Friday, excluding holidays, unless otherwise specified in the attached Exhibits. Local legal holidays will apply.

### 5.    Warranty

ValCom shall provide all services in a professional and workman like manner.

### 6.    Disclaimers and Limitations of Liability

With regard to all products and services provided to Client by ValCom, now or in the future and whether or not covered by this Master Service Agreement, the parties agree as follows:

WITH THE EXCEPTION OF THE WARRANTIES LISTED IN THIS AGREEMENT, VALCOM DISCLAIMS ALL WARRANTIES INCLUDING THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND YEAR 2000 COMPATIBILITY. VALCOM WILL NOT UNDER ANY CIRCUMSTANCES BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING BUT NOT LIMITED TO, PROPERTY DAMAGE, LOST TIME, LOSS OF USE OF ANY EQUIPMENT OR ANY OTHER DAMAGES RESULTING FROM THE BREAKDOWN OR FAILURE OF ANY EQUIPMENT OR FROM DELAYS IN SERVICING OR THE INABILITY TO RENDER SERVICE ON ANY EQUIPMENT. VALCOM LIABILITY FOR DAMAGES RESULTING FROM ANY CAUSE WHATSOEVER, INCLUDING BUT NOT LIMITED TO VALCOM NEGLIGENCE OR INSTALLATION OF DEFECTIVE PARTS OR COMPONENTS, WHETHER OR NOT SUCH DEFECT WAS KNOWN OR DISCOVERABLE, SHALL NOT EXCEED THE ACTUAL PRICE PAID TO VALCOM BY CLIENT FOR THE EQUIPMENT, PARTS OR SERVICE WHICHEVER IS LESS.



PLAINTIFF'S EXHIBIT
B

ValCom shall not be responsible for damages caused by accidents, misuse, misapplication, neglect of Client or any of its agents or employees or as result of service by any person other than a ValCom representative; placement or operation of the Equipment in an area that does not comply with manufacturer's published space or environmental requirements; or improper storage, use, and movement of the Equipment. Notwithstanding anything herein to the contrary, ValCom's entire liability and Client's exclusive remedy from any cause or source whatsoever, including but not limited to nonperformance or misrepresentation and regardless of the form of action, shall be limited to a refund of the price paid by Client for the specific product (s) or services that caused the damages or claims that are the subject matter of, or are indirectly related to, the cause of action. In no event will ValCom be liable for lost profits, lost savings or other incidental or consequential damages, even if ValCom had been advised of the possibility of such damages, for any claim against Client by any other party.

7.    <u>Pricing</u>

The price for services under this Agreement is set forth in the attached Exhibits. ValCom may, after the initial term of this Agreement, increase charges for services by giving the Client thirty (30) days written notice.

8.    <u>Client Representations</u>

Client represents and warrants to ValCom that Client has the right to authorize ValCom to repair and/or service all items of Equipment which are or become subject to this Agreement.

9.    <u>Client Responsibilities</u>

Client, at its expense, shall:

    A.  Allow employees or agents of ValCom reasonable access to the premises and facilities where the Equipment to be serviced is located.
    B.  Provide appropriate electric current for any necessary purpose with suitable outlets.
    C.  Provide suitable and easily accessible floor space, adjacent to where Equipment will be serviced.
    D.  Ensure the timely backup, removal, protection, and restoration, as applicable, of any programs, data and removable storage media contained in the Equipment before rendering the Equipment for service and the restoration of all data after the completion of service.

Upon the failure of Client to comply with the responsibilities set forth in this Section ("Non-compliance"), ValCom may, at its option, refuse to perform any service where Non-compliance has occurred until such Non-compliance has been cured to the reasonable satisfaction of ValCom without any liability or obligation under this Agreement or any applicable law; provided further, that ValCom may charge Client at the then current labor rates for any service call at which no service was performed by ValCom as a result of Non-compliance.

**Client agrees during the term of this Agreement and for a period of one (1) year after its termination, not to solicit, directly or indirectly (through individuals, subsidiaries, holding companies, partnerships, subcontractors or any other financially related firms), nor to tender an offer for employment nor place on their payrolls any employee who is or was, within ninety days prior to the time of such solicitation, on ValCom's payroll.** In the event Client hires or contracts with a ValCom employee in violation of the terms of this paragraph, the Client agrees to pay ValCom as liquidated damages, and not as a penalty, an amount equal to one half of the employee's annual compensation, including but not limited to wages, bonuses and fringe benefits. This provision for liquidated damages shall not limit remedies against the Client for any other breach of this Agreement. Client will require all agencies and/or subcontractors working on Client's premises with ValCom employees to execute a document indicating their Agreement to the terms of this paragraph. In the event of a violation of this provision by a subcontractor or other third party on Client's premises, Client agrees not to use the services of such individual(s) hired by such subcontractor or third party.

10.    **Terms of Payment**

ValCom shall invoice Client as specified in the attached Exhibits for the services to be rendered under this Agreement and Client shall make payment to ValCom within ten days of the invoice date. Client agrees to establish credit privileges with ValCom, for the purposes of billing, and to provide all information to ValCom necessary to establish such credit privileges.

11.    **Right of Termination**

   A.  Client
       Client may cancel coverage under this Agreement for any item of Equipment which it takes out of service, by giving ValCom not less than thirty (30) days prior written notice. For any item of Equipment so canceled, appropriate credit will be determined by ValCom and applied to subsequent billing to Client.

   B.  ValCom
       If ValCom is unable to furnish any parts or acquire technical data required to repair and/or service any item of Equipment, then ValCom may cancel coverage for that item of Equipment under the Agreement and ValCom will refund payment for the remaining days of coverage under this Agreement, on a prorata basis.

       If, during the course of this Agreement, items of Equipment experience an excessive failure rate due to age, discontinuance of spare parts availability from the manufacturer or other causes beyond ValCom's control, Client agrees to replace or refurbish said Equipment at no charge to ValCom. If Client fails to do so, ValCom may, at its option, exclude the Equipment from coverage by giving the Client (30) days written notice.

   C.  Mutual Rights of Termination
       After the initial term, either Party hereto shall have the right to terminate this Agreement without cause, without penalty, and without liability for any damages as a result of such termination at any time giving the other Party at least thirty (30) days prior written notice of such termination. If either Party terminates the Agreement, ValCom will refund payment for the remaining days of coverage under the Agreement. Any funds so owed by ValCom will be refunded in full within sixty (60) days after receiving written notice of contract termination.

12.    **Fees, Taxes**

Client, at its expense, shall pay, discharge, and be responsible for, all licensee fees, business, sales, use, gross receipts, income, property or other similar taxes or assessments charged or levied by reason of anything performed under this Agreement, excluding, however, all taxes and assessments applicable to ValCom income or applicable to ValCom property.

13.    **No Assignments**

This Agreement is not transferable or assignable by ValCom in whole or in part without the prior written consent of Client, however ValCom may assign subcontractors or qualified temporary help to assist in performing its obligations under this Agreement.

14.    **Waiver**

No waiver of any provision or breach shall be implied by failure to enforce any rights or remedies herein provided, and no express waiver shall affect any provision or breach other than that to which the waiver is applicable and only for that occurrence.

15.    **Subcontracting**

In order to provide services in some areas not served by a ValCom service center, ValCom may subcontract for on-site services provided to Client. Such subcontracting will not release ValCom from any of its obligations in this Agreement.

## 16.    Excused Performance

Neither Party shall be liable for any failure, inability or delay to perform hereunder, if such failure, inability or delay is due to circumstances beyond its reasonable control, including, but not limited to, acts of God, war, Strike, lockout, labor disturbance, social conflict, fire, explosion, or sabotage.

## 17.    Notices

All notices herein provided for or which may be given in connection with this Agreement shall be by certified mail with postage prepaid and return receipt requested or personal delivery or facsimile.

If any such notice by Client to ValCom, it shall be addressed to:

VALCOM
ATTN: Contract Administration
Corporate Headquarters
1433 Hamilton Parkway
Itasca, Illinois 60143

And if given by ValCom to Client such notice shall be addressed to:

clix'n mortar.com
ATTN: Alex Carroll
10255 W. Higgins, Suite 820
Rosemont, IL 60018

## 18.    Governing Law

This Agreement shall be interpreted and governed by the laws of the State of Illinois. The parties agree that the venue for any actions brought pursuant to this Agreement shall be either the Courts of the State of Illinois, County of DuPage, or the U.S. District Court for the Northern District of Illinois, Eastern Division.

## 19.    Entire Agreement

This Agreement sets forth the entire Agreement and understanding between the Parties with respect to the subject matter hereof. The attached Exhibits hereto are made a part of this Agreement. This Agreement shall not be supplemented, modified or amended except by a written instrument signed by duly authorized representatives of Client and ValCom, respectively, and no other person has or shall have the authority to supplement, modify or amend this Agreement in another manner.

**IN WITNESS WHEREOF, the Parties have signed this Agreement by their duly authorized representatives.**

ValCom, Professional Computer Center, Inc.

By: _Marissa Cumbo_

Typed Name: _____

Title: _____

Date: _____

**ValCom Contact Information:**

AE Name: _____

AE Phone Number: _____

clixnmortar.com, inc.

By: _____

Typed Name: _ROBERT D. Covington_

Title: _SR. VP & CTO_

Date: _6/5/00_

**Client Contact Information:**

Contact Name: _____

Contact Phone Number: _____

Clix 'n' Mortar
~~Clicks and Mortar~~
EXHIBIT __A___
Agreement #__2___

**In the event of any conflict between the terms of this Exhibit and the terms of the attached Master Service Agreement, the terms of this Exhibit shall govern:**

*Dedicated On-site Resource*

| | |
|---|---|
| Term of Agreement: | Friday, February 24, 2000 |
| Days of Service: | Friday |
| Hours of Service: | 1:00 a.m. to 9:00 a.m. |
| Hours Per Day: | 8 |
| Location(s) of Service: | 115 West Washington Ave Indianapolis, IN 46204 |
| Contact: | Rich Banta |
| Phone: | (317)-636-1600 |
| Hourly Rate: | $ 85/hr |
| After Hours/Overtime Rate: | $ 127.50/hr |
| Sundays and Holidays: | $ 127.50/hr |
| Minimum Hourly Commitment: | 1 |
| Billing Frequency: | Monthly |

*Overview of Services*

ValCom will provide the services of a Dedicated Network On-Site Resource to perform tasks as assigned by the customer. These services could include but are not limited to:

- Network installation, administration, troubleshooting and support
- Workstation installation, troubleshooting and support
- Printer installation, troubleshooting and support
- DOS and Windows installation, troubleshooting and support

Software installation, troubleshooting and support ValCom does not offer warranties on the products which are serviced, nor does it warrant as to whether such products (either before or after they are serviced) are designed to be utilized prior to, during and after the year 2000 or as to any issue arising out of year 2000 compatibility.

ValCom , Professional Computer Center, Inc.

By: _Mariann Cumbo_

Typed Name: _MARIANN CUMBO_

Title: _CONTRACT/BILLING MGR_

Date: _3/13/00_

~~Clicks and Mortar~~ Clix N' Mortar

By: _____

Typed Name: _____

Title: _____

Date: _____

clix'n mortar.com
EXHIBIT __A___
Agreement #__3___

In the event of any conflict between the terms of this Exhibit and the terms of the attached Master Service Agreement, the terms of this Exhibit shall govern:

*Dedicated On-site Resource*

| | |
|---|---|
| Term of Agreement: | March 9, 2000-March 9, 2001 |
| Days of Service: | Saturday-Sunday |
| Hours of Service: | 8 a.m. to 5 p.m. |
| Hours Per Day: | 8 |
| Location(s) of Service: | Simon Property Group<br>115 West Washington Ave<br>Indianapolis, IN 46204 |
| Contact: | Alex Carroll/Rich Banta |
| Phone: | (317)-636-1600 |
| Hourly Rate: | $ 85/hr |
| On-Call Charge: | $200/wk |
| After Hours/Overtime Rate: | $ 127.50/hr |
| Sundays and Holidays: | $ 127.50/hr |
| Minimum Hourly Commitment: | 1 |
| Billing Frequency: | Monthly |

*Overview of Services*

ValCom will provide the services of a Dedicated Network On-Site Resource to perform tasks as assigned by the customer. These services could include but are not limited to:

- Network installation, administration, troubleshooting and support
- Workstation installation, troubleshooting and support
- Printer installation, troubleshooting and support
- DOS and Windows installation, troubleshooting and support

Software installation, troubleshooting and support ValCom does not offer warranties on the products which are serviced. nor does it warrant as to whether such products (either before or after they are serviced) are designed to be utilized prior to, during and after the year 2000 or as to any issue arising out of year 2000 compatibility.

ValCom , Professional Computer Center, Inc.

By: *Mariann Cumbo*

Typed Name: *MARIANN CUMBO*

Title: *CONTRACT/BILLING MGR*

Date: *4/26/00*

clix'n mortar.com

By: *RL Bt*

Typed Name: *Richard L Banta*

Title: *Managing Consultant*

Date: *4/12/00*

# MASTER
# SERVICE AGREEMENT

THIS MASTER SERVICE AGREEMENT ("AGREEMENT") is made and entered into by and between Professional Computer Center, Inc., d/b/a ValCom, an Illinois corporation, located at 1433 Hamilton Parkway, Itasca, Illinois 60143, and Simon Property Group ("Client"), located at 115 West Washington Ave, Indianapolis, IN 46204.

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein, the parties hereby agree as follows:

## 1.    Services

The date of service, equipment covered (hereinafter "Equipment"), definition of services, terms, (terms and conditions below as well) for this Agreement are identified in the attached Exhibit A.

## 2.    Term

This Agreement shall be effective as of 1/24/00. The initial term of this Agreement shall be for 12 months following the date service begins. Following the initial term, this Agreement shall continue in effect for successive 12 month periods unless terminated by either Party pursuant to paragraph 11.

## 3.    Place for Service

ValCom shall perform services at location(s) listed in the attached Exhibits.

## 4.    Time/Days for Service

ValCom shall provide services identified in the attached Exhibits during local service hours of 8:00 a.m. to 5:00 p.m., central time, Monday through Friday, excluding Client holidays, unless otherwise specified in the attached Exhibits.

## 5.    Warranty

ValCom represents and warrants that it has all right, title, licenses and approvals necessary to perform its obligations hereunder. ValCom shall provide all services in a timely, professional, and workman like manner consistent with current industry standards. ValCom shall re-perform within 15 days any services for which ValCom has been in breach of such warranty, provided ValCom has received written notice of such breach by Client. If ValCom fails to so re-perform any services hereunder to Client's reasonable satisfaction, client will be entitled to any and all remedies hereunder, including without limitation, immediate termination of this Agreement.

## 6.    Disclaimers and Limitations of Liability

With regard to all products and services provided to Client by ValCom under this Agreement, the parties agree as follows:

WITH THE EXCEPTION OF THE WARRANTIES LISTED IN THIS AGREEMENT, VALCOM DISCLAIMS ALL WARRANTIES INCLUDING THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND YEAR 2000 COMPATIBILITY. EXCEPT FOR CLAIMS COVERED BY SECTION 7, VALCOM WILL NOT UNDER ANY CIRCUMSTANCES BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING BUT NOT LIMITED TO. PROPERTY DAMAGE, LOST TIME, LOSS OF USE OF ANY EQUIPMENT OR ANY OTHER DAMAGES RESULTING FROM THE BREAKDOWN OR FAILURE OF ANY EQUIPMENT OR FROM DELAYS IN SERVICING OR THE INABILITY TO RENDER SERVICE ON ANY EQUIPMENT. EXCEPT FOR CLAIMS COVERED BY SECTION 7, VALCOM LIABILITY FOR DAMAGES RESULTING FROM ANY CAUSE WHATSOEVER, INCLUDING BUT NOT LIMITED TO VALCOM NEGLIGENCE OR INSTALLATION OF DEFECTIVE PARTS OR COMPONENTS, WHETHER OR NOT SUCH DEFECT WAS KNOWN OR DISCOVERABLE, SHALL NOT EXCEED THE ACTUAL PRICE PAID TO VALCOM BY CLIENT FOR THE EQUIPMENT, PARTS OR SERVICE WHICHEVER IS LESS.

PLAINTIFF'S
EXHIBIT
C

### 7.    Indemnification

Client agrees to indemnify and hold ValCom and its employees, agents, suppliers or subcontractors harmless from all losses, damages and expenses incurred in connection with any claims, demands and other liabilities for injury to third persons or damage to the property of third persons, asserted against any of them as a result of, or which arise from any negligent or intentional act or omission by Client.  ValCom agrees to indemnify and hold Client and its employees, agents, suppliers or subcontractors harmless from all losses, damages and expenses incurred in connection with any claims, demands and other liabilities for injury to third persons or damage to the property of third persons, which arise from any negligent or intentional act or omission by ValCom or its subcontractors.

ValCom shall not be responsible for damages caused by accidents, misuse, misapplication, neglect of Client or any of its agents or employees or as result of service by any person other than a ValCom representative; placement or operation of the Equipment in an area that does not comply with manufacturer's published space or environmental requirements; or improper storage, use, and movement of the Equipment by a reason other than ValCom or its subcontractors.

### 8.    Pricing

The price for services under this Agreement is set forth in the attached Exhibits.  ValCom may, after the initial term of this Agreement, increase charges for services by giving the Client thirty (30) days written notice.

### 9.    Client Representations

Client represents and warrants to ValCom that Client has the right to authorize ValCom to repair and/or service all items of Equipment which are or become subject to this Agreement.  Valcom represents and warrants that it has the right to enter into this Agreement and has the right to repair, and/or service all items of equipment which are or become subject to this Agreement.

### 10.    Client Responsibilities

Client, at its expense, shall:

    A.  Allow employees or agents of ValCom reasonable access to the premises and facilities where the Equipment to be serviced is located.
    B.  Provide appropriate electric current for any necessary purpose with suitable outlets.
    C.  Provide suitable and easily accessible floor space, adjacent to where Equipment will be serviced.
    D.  Ensure the timely backup, removal, protection, and restoration, as applicable, of any programs, data and removable storage media contained in the Equipment before rendering the Equipment for service and the restoration of all data after the completion of service.

Upon the failure of Client to comply with the responsibilities set forth in this Section ("Non-compliance"), ValCom may, at its option, refuse to perform any service where Non-compliance has occurred until such Non-compliance has been cured to the reasonable satisfaction of ValCom without any liability or obligation under this Agreement or any applicable law.

Client agrees during the term of this Agreement and for a period of one (1) year after its termination, not to solicit, directly or indirectly (through individuals, subsidiaries, holding companies, partnerships, subcontractors or any other financially related firms), nor to tender an offer for employment nor place on their payrolls any employee who is or was, within ninety days prior to the time of such solicitation, providing services related to this Agreement to Client and employed by ValCom. Nothing contained in this Section is deemed to prohibit either party from making general public solicitations for particular positions or job classifications or from responding to inquiries or overtures initiated by employees of the other party. In the event Client hires or contracts with a ValCom employee in violation of the terms of this paragraph, the Client agrees to pay ValCom as liquidated damages, and not as a penalty, an amount equal to one half of the employee's annual compensation, including but not limited to wages, bonuses and fringe benefits. This provision for liquidated damages shall not limit remedies against the Client for any other breach of this Agreement. Client will require all agencies and/or subcontractors working on Client's premises with ValCom employees to execute a document indicating their Agreement to the terms of this paragraph. In the event of a violation of this provision by a subcontractor or other third party on Client's premises, Client agrees not to use the services of such individual(s) hired by such subcontractor or third party.

## 11.    Terms of Payment

ValCom shall invoice Client as specified in the attached Exhibits for the services to be rendered under this Agreement and Client shall make payment to ValCom within thirty days of the invoice date.

## 12.    Right of Termination

A.  Client
   Client may cancel coverage under this Agreement for any item of Equipment which it takes out of service, by giving ValCom not less than thirty (30) days prior written notice. For any item of Equipment so canceled, appropriate credit will be determined by ValCom and applied to subsequent billing to Client.

B.  ValCom
   If ValCom is unable, after its best efforts, to furnish any parts or acquire technical data required to repair and/or service any item of Equipment, then ValCom may cancel coverage for that item of Equipment under the Agreement and ValCom will refund payment for the remaining days of coverage under this Agreement, on a prorata basis.

   If, during the course of this Agreement, items of Equipment experience an excessive failure rate due to age, discontinuance of spare parts availability from the manufacturer or other causes beyond ValCom's control, Client agrees to replace or refurbish said Equipment at no charge to ValCom. If Client fails to do so, ValCom may, at its option, exclude the Equipment from coverage by giving the Client (30) days written notice.

C.  Mutual Rights of Termination
   After the initial term, either Party hereto shall have the right to terminate this Agreement without cause, without penalty, and without liability for any damages as a result of such termination at any time giving the other Party at least thirty (30) days prior written notice of such termination. If either Party terminates the Agreement, ValCom will refund payment for the remaining days of coverage under the Agreement. Any funds so owed by ValCom will be refunded in full within sixty (60) days after receiving written notice of contract termination.

## 13.    Fees, Taxes

Client, at its expense, shall pay, discharge, and be responsible for, all licensee fees, business, sales, use, gross receipts, income, property or other similar taxes or assessments charged or levied by reason of anything performed under this Agreement, excluding, however, all taxes and assessments applicable to ValCom income or applicable to ValCom property.

## 14.    No Assignments

This Agreement is not transferable or assignable by ValCom in whole or in part without the prior written consent of Client, however ValCom may assign qualified subcontractors or qualified temporary help to assist in performing its obligations under this Agreement after obtaining from Client written approval of such subcontractor or temporary help, such approval not to be unreasonably withheld. In addition, such subcontractor or temporary help must agree in writing to be bound by the applicable sections of this Agreement, including, without limitation, the confidentiality obligations set forth in Section 17.

## 15.    Waiver

No waiver of any provision or breach shall be implied by failure to enforce any rights or remedies herein provided, and no express waiver shall affect any provision or breach other than that to which the waiver is applicable and only for that occurrence.

## 16.    Subcontracting

In order to provide services in some areas not served by a ValCom service center, ValCom may subcontract for qualified on-site services provided to Client after obtaining from Client written approval of such subcontractor or on-site service provider, such approval not to be unreasonably withheld. In addition, such subcontractor or on-site service provider must agree in writing to be bound by the applicable sections of this Agreement, including, without limitation, the confidentiality obligations set forth in Section 17. Such subcontracting will not release ValCom from any of its obligations in this Agreement.

## 17.    Confidentiality and Non-Disclosure

Each party acknowledges that in the performance of this Agreement it may be exposed to certain Confidential Information of the other party, the disclosure of which to third parties would be damaging. Both parties agree (i) not to use such Confidential Information except in the performance of this Agreement, (ii) not to disclose such Confidential Information to any third, party, and (iii) to treat such Confidential Information with the same degree of care, but not less than reasonable care, with which each party treats its own Confidential Information of like importance.

## 18.    Excused Performance

Neither Party shall be liable for any failure, inability or delay to perform hereunder, if such failure, inability or delay is due to circumstances beyond its reasonable control, including, but not limited to, acts of God, war, Strike, lockout, labor disturbance, social conflict, fire, explosion, or sabotage.

## 19.    Notices

All notices herein provided for or which may be given in connection with this Agreement shall be by certified mail with postage prepaid and return receipt requested or personal delivery or facsimile.

If any such notice by Client to ValCom, it shall be addressed to:

VALCOM
ATTN: Contract Administration
Corporate Headquarters
1433 Hamilton Parkway
Itasca, Illinois 60143

And if given by ValCom to Client such notice shall be addressed to:

SIMON PROPERTY GROUP
ATTN: Peter Bales
115 West Washington Ave
Indianapolis, IN 46204

**20.    Governing Law**

This Agreement shall be interpreted and governed by the laws of the State of Illinois.

**21.    Entire Agreement**

This Agreement sets forth the entire Agreement and understanding between the Parties with respect to the subject matter hereof. The attached Exhibits hereto are made a part of this Agreement. This Agreement shall not be supplemented, modified or amended except by a written instrument signed by duly authorized representatives of Client and ValCom, respectively, and no other person has or shall have the authority to supplement, modify or amend this Agreement in another manner.

**IN WITNESS WHEREOF, the Parties have signed this Agreement by their duly authorized representatives.**

**ValCom, Professional Computer Center, Inc.**

By:_____

Typed Name:_____

Title:_____

Date:_____

**ValCom Contact Information:**

AE Name:_____

AE Phone Number:_____

**Simon Property Group**

By:_____

Typed Name: ROBERT D. COVINGTON

Title: VP & CTO

Date: 6/5/00

**Client Contact Information:**

Contact Name:_____

Contact Phone Number:_____

**Simon Property Group**
**EXHIBIT __A___**
Agreement #__1___

In the event of any conflict between the terms of this Exhibit and the terms of the attached Master Service Agreement, the terms of this Exhibit shall govern:

*Dedicated On-site Resources*

| | |
|---|---|
| Term of Agreement: | January 28, 2000-January 28, 2001 |
| Days of Service: | Sunday to Saturday |
| Hours of Service: | 8:00 a.m. to 5:00 p.m. |
| Hours Per Day: | 8 |
| Location(s) of Service: | Simon Property Group<br>115 West Washington Ave<br>Indianapolis, IN 46204 |
| Contact: | Peter Bales |
| Phone: | (317)-636-1600 |
| Hourly Rate: | $ 45/hr |
| After Hours/Overtime Rate: | $ 67.50/hr |
| Sundays and Holidays: | $ 67.50/hr |
| Minimum Hourly Commitment: | 40 |
| Billing Frequency: | Monthly |

*Overview of Services*

Valcom will provide the services of two Dedicated On-site Resources to perform tasks as assigned by the customer.  These services could include but are not limited to:

- Troubleshoot hardware and software problems
- Perform repairs for equipment failures
- Connect new workstations to networks and host systems
- Coordinate and perform new equipment installations
- Coordinate and perform equipment moves
- Coordinate and perform equipment upgrades
- Perform software installations
- Perform physical inventories
- Perform data migration services

ValCom does not offer warranties on the products which are serviced, nor does it warrant as to whether such products (either before or after they are serviced) are designed to be utilized prior to, during and after the year 2000 or as to any issue arising out of year 2000 compatibility.

| ValCom , Professional Computer Center, Inc. | Simon Property Group |
|---|---|
| By: *Mariann Cumbo* | By: *D. S.* |
| Typed Name: MARIANN CUMBO | Typed Name: David Schacht |
| Title: CONTRACT /BILLING ADM | Title: V.P. IS |
| Date: 3/15/00 | Date: 3/2/2000 |

Exhibit __1___ - Page 1

# MASTER
# SERVICE AGREEMENT

THIS MASTER SERVICE AGREEMENT ("AGREEMENT") is made and entered into by and between Professional Computer Center. Inc., d/b/a ValCom, an Illinois corporation, located at 1433 Hamilton Parkway, Itasca, Illinois 60143, and MerchantWired.com ("Client"), located at 115 West Washington Ave, Indianapolis, IN 46204.

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein, the parties hereby agree as follows:

1.  **Services**

The date of service, equipment covered (hereinafter "Equipment"), definition of services, terms, (terms and conditions below as well) for this Agreement are identified in the attached Exhibit A.

2.  **Term**

This Agreement shall be effective as of 1/24/00. The initial term of this Agreement shall be for 12 months following the date service begins. Following the initial term, this Agreement shall continue in effect for successive 12 month periods unless terminated by either Party pursuant to paragraph 11.

3.  **Place for Service**

ValCom shall perform services at location(s) listed in the attached Exhibits.

4.  **Time/Days for Service**

ValCom shall provide services identified in the attached Exhibits during local service hours of 8:00 a.m. to 5:00 p.m., central time, Monday through Friday, excluding Client holidays, unless otherwise specified in the attached Exhibits.

5.  **Warranty**

ValCom represents and warrants that it has all right, title, licenses and approvals necessary to perform its obligations hereunder. ValCom shall provide all services in a timely, professional, and workman like manner consistent with current industry standards. ValCom shall re-perform within 15 days any services for which ValCom has been in breach of such warranty, provided ValCom has received written notice of such breach by Client. If ValCom fails to so re-perform any services hereunder to Client's reasonable satisfaction, client will be entitled to any and all remedies hereunder, including without limitation, immediate termination of this Agreement.

6.  **Disclaimers and Limitations of Liability**

With regard to all products and services provided to Client by ValCom under this Agreement, the parties agree as follows:

WITH THE EXCEPTION OF THE WARRANTIES LISTED IN THIS AGREEMENT, VALCOM DISCLAIMS ALL WARRANTIES INCLUDING THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND YEAR 2000 COMPATIBILITY. EXCEPT FOR CLAIMS COVERED BY SECTION 7, VALCOM WILL NOT UNDER ANY CIRCUMSTANCES BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING BUT NOT LIMITED TO, PROPERTY DAMAGE, LOST TIME, LOSS OF USE OF ANY EQUIPMENT OR ANY OTHER DAMAGES RESULTING FROM THE BREAKDOWN OR FAILURE OF ANY EQUIPMENT OR FROM DELAYS IN SERVICING OR THE INABILITY TO RENDER SERVICE ON ANY EQUIPMENT. EXCEPT FOR CLAIMS COVERED BY SECTION 7, VALCOM LIABILITY FOR DAMAGES RESULTING FROM ANY CAUSE WHATSOEVER, INCLUDING BUT NOT LIMITED TO VALCOM NEGLIGENCE OR INSTALLATION OF DEFECTIVE PARTS OR COMPONENTS, WHETHER OR NOT SUCH DEFECT WAS KNOWN OR DISCOVERABLE, SHALL NOT EXCEED THE ACTUAL PRICE PAID TO VALCOM BY CLIENT FOR THE EQUIPMENT, PARTS OR SERVICE WHICHEVER IS LESS.

**PLAINTIFF'S EXHIBIT**

7.      **Indemnification**

Client agrees to indemnify and hold ValCom and its employees, agents, suppliers or subcontractors harmless from all losses, damages and expenses incurred in connection with any claims, demands and other liabilities for injury to third persons or damage to the property of third persons, asserted against any of them as a result of, or which arise from any negligent or intentional act or omission by Client. ValCom agrees to indemnify and hold Client and its employees, agents, suppliers or subcontractors harmless from all losses, damages and expenses incurred in connection with any claims, demands and other liabilities for injury to third persons or damage to the property of third persons, which arise from any negligent or intentional act or omission by ValCom or its subcontractors.

ValCom shall not be responsible for damages caused by accidents, misuse, misapplication, neglect of Client or any of its agents or employees or as result of service by any person other than a ValCom representative; placement or operation of the Equipment in an area that does not comply with manufacturer's published space or environmental requirements; or improper storage, use, and movement of the Equipment by a reason other than ValCom or its subcontractors.

8.      **Pricing**

The price for services under this Agreement is set forth in the attached Exhibits. ValCom may, after the initial term of this Agreement, increase charges for services by giving the Client thirty (30) days written notice.

9.      **Client Representations**

Client represents and warrants to ValCom that Client has the right to authorize ValCom to repair and/or service all items of Equipment which are or become subject to this Agreement. Valcom represents and warrants that it has the right to enter into this Agreement and has the right to repair, and/or service all items of equipment which are or become subject to this Agreement.

10.     **Client Responsibilities**

Client, at its expense, shall:

- A.   Allow employees or agents of ValCom reasonable access to the premises and facilities where the Equipment to be serviced is located.
- B.   Provide appropriate electric current for any necessary purpose with suitable outlets.
- C.   Provide suitable and easily accessible floor space, adjacent to where Equipment will be serviced.
- D.   Ensure the timely backup, removal, protection, and restoration, as applicable, of any programs, data and removable storage media contained in the Equipment before rendering the Equipment for service and the restoration of all data after the completion of service.

Upon the failure of Client to comply with the responsibilities set forth in this Section ("Non-compliance"), ValCom may, at its option, refuse to perform any service where Non-compliance has occurred until such Non-compliance has been cured to the reasonable satisfaction of ValCom without any liability or obligation under this Agreement or any applicable law.

Client agrees during the term of this Agreement and for a period of one (1) year after its termination, not to solicit, directly or indirectly (through individuals, subsidiaries, holding companies, partnerships, subcontractors or any other financially related firms), nor to tender an offer for employment nor place on their payrolls any employee who is or was, within ninety days prior to the time of such solicitation, providing services related to this Agreement to Client and employed by ValCom. Nothing contained in this Section is deemed to prohibit either party from making general public solicitations for particular positions or job classifications or from responding to inquiries or overtures initiated by employees of the other party. In the event Client hires or contracts with a ValCom employee in violation of the terms of this paragraph, the Client agrees to pay ValCom as liquidated damages, and not as a penalty, an amount equal to one half of the employee's annual compensation, including but not limited to wages, bonuses and fringe benefits. This provision for liquidated damages shall not limit remedies against the Client for any other breach of this Agreement. Client will require all agencies and/or subcontractors working on Client's premises with ValCom employees to execute a document indicating their Agreement to the terms of this paragraph. In the event of a violation of this provision by a subcontractor or other third party on Client's premises, Client agrees not to use the services of such individual(s) hired by such subcontractor or third party.

## 11.    Terms of Payment

ValCom shall invoice Client as specified in the attached Exhibits for the services to be rendered under this Agreement and Client shall make payment to ValCom within thirty days of the invoice date.

## 12.    Right of Termination

A.  Client
Client may cancel coverage under this Agreement for any item of Equipment which it takes out of service, by giving ValCom not less than thirty (30) days prior written notice. For any item of Equipment so canceled, appropriate credit will be determined by ValCom and applied to subsequent billing to Client.

B.  ValCom
If ValCom is unable, after its best efforts, to furnish any parts or acquire technical data required to repair and/or service any item of Equipment, then ValCom may cancel coverage for that item of Equipment under the Agreement and ValCom will refund payment for the remaining days of coverage under this Agreement, on a prorata basis.

If, during the course of this Agreement, items of Equipment experience an excessive failure rate due to age, discontinuance of spare parts availability from the manufacturer or other causes beyond ValCom's control, Client agrees to replace or refurbish said Equipment at no charge to ValCom. If Client fails to do so, ValCom may, at its option, exclude the Equipment from coverage by giving the Client (30) days written notice.

C.  Mutual Rights of Termination
After the initial term, either Party hereto shall have the right to terminate this Agreement without cause, without penalty, and without liability for any damages as a result of such termination at any time giving the other Party at least thirty (30) days prior written notice of such termination. If either Party terminates the Agreement, ValCom will refund payment for the remaining days of coverage under the Agreement. Any funds so owed by ValCom will be refunded in full within sixty (60) days after receiving written notice of contract termination.

## 13.    Fees, Taxes

Client, at its expense, shall pay, discharge, and be responsible for, all licensee fees, business, sales, use, gross receipts, income, property or other similar taxes or assessments charged or levied by reason of anything performed under this Agreement, excluding, however, all taxes and assessments applicable to ValCom income or applicable to ValCom property.

## 14.  No Assignments

This Agreement is not transferable or assignable by ValCom in whole or in part without the prior written consent of Client, however ValCom may assign qualified subcontractors or qualified temporary help to assist in performing its obligations under this Agreement after obtaining from Client written approval of such subcontractor or temporary help, such approval not to be unreasonably withheld. In addition, such subcontractor or temporary help must agree in writing to be bound by the applicable sections of this Agreement, including, without limitation, the confidentiality obligations set forth in Section 17.

## 15.  Waiver

No waiver of any provision or breach shall be implied by failure to enforce any rights or remedies herein provided, and no express waiver shall affect any provision or breach other than that to which the waiver is applicable and only for that occurrence.

## 16.  Subcontracting

In order to provide services in some areas not served by a ValCom service center, ValCom may subcontract for qualified on-site services provided to Client after obtaining from Client written approval of such subcontractor or on-site service provider, such approval not to be unreasonably withheld.  In addition, such subcontractor or on-site service provider must agree in writing to be bound by the applicable sections of this Agreement, including, without limitation, the confidentiality obligations set forth in Section 17.  Such subcontracting will not release ValCom from any of its obligations in this Agreement.

## 17.  Confidentiality and Non-Disclosure

Each party acknowledges that in the performance of this Agreement it may be exposed to certain Confidential Information of the other party, the disclosure of which to third parties would be damaging.  Both parties agree (i) not to use such Confidential Information except in the performance of this Agreement, (ii) not to disclose such Confidential Information to any third party, and (iii) to treat such Confidential Information with the same degree of care, but not less than reasonable care, with which each party treats its own Confidential Information of like importance.

## 18.  Excused Performance

Neither Party shall be liable for any failure, inability or delay to perform hereunder, if such failure, inability or delay is due to circumstances beyond its reasonable control, including, but not limited to, acts of God, war, Strike, lockout, labor disturbance, social conflict, fire, explosion, or sabotage.

## 19.  Notices

All notices herein provided for or which may be given in connection with this Agreement shall be by certified mail with postage prepaid and return receipt requested or personal delivery or facsimile.

If any such notice by Client to ValCom, it shall be addressed to:

VALCOM
ATTN: Contract Administration
Corporate Headquarters
1433 Hamilton Parkway
Itasca, Illinois 60143

And if given by ValCom to Client such notice shall be addressed to:

MerchantWired.com
ATTN:  Shannon Morris
115 West Washington Ave
Indianapolis, IN 46204

**20.**    **Governing Law**

This Agreement shall be interpreted and governed by the laws of the State of Illinois.

**21.**    **Entire Agreement**

This Agreement sets forth the entire Agreement and understanding between the Parties with respect to the subject matter hereof. The attached Exhibits hereto are made a part of this Agreement.  This Agreement shall not be supplemented, modified or amended except by a written instrument signed by duly authorized representatives of Client and ValCom, respectively, and no other person has or shall have the authority to supplement, modify or amend this Agreement in another manner.

**IN WITNESS WHEREOF, the Parties have signed this Agreement by their duly authorized representatives.**

ValCom, Professional Computer Center, Inc.                MerchantWired.com

By:_____                By:_____

Typed Name: _____                Typed Name: ROBERT D. COVINGTON

Title: _____                Title: EVP & CTO

Date:_____                Date: 6/5/00

ValCom Contact Information:                Client Contact Information:

AE Name:_____                Contact Name:_____

AE Phone Number: _____                Contact Phone Number:_____



July 13, 2000

VIA FAX (317-263-7009) AND
FEDERAL EXPRESS

Mr. Robert Covington
Merchant Wired
115 West Washington Street
Indianapolis, In. 46204

Dear Bob:

As you will recall, you signed a contract with ValCom on behalf of Clix 'n Mortar.com on January 20, 2000 for the services of John Chirillo, for the calendar year 2000.

We had understood that you were pleased with the services provided by John. In fact, you will recall that in April, we were going to review John's time for March at the request of Alex Carroll and had sent you an email in that regard. At the time Alex had indicated that this investigation was at your request. You responded via email telling us not to pursue it, that you were in direct communication with John and everything was fine.

As far as continuing follow up on John Chirillo's work, I left you a voicemail message and sent a separate email message, but I heard nothing from you. As far as we were concerned, John reported directly to you and you were satisfied with his work.

We have had no complaints from anyone concerning John's services .

That is why it comes as a great surprise to us that we have seriously delinquent invoices for John's time for the months of April, May and June. Copies of those invoices are enclosed. The amount outstanding is $91,250.00. John continues to work for you per our contract and billing will continue.

Moreover, we had what we consider to be a disturbing phone call recently from Alex Carroll indicating that you did not feel you were getting adequate value any longer for John's time. Given the fact that no complaints were ever raised by your company as to anything John has done, that invoices have been outstanding since April and each month after that with no complaint, as well as your indicating that you were satisfied with John's performance, we were shocked by Alex's phone call. I advised Alex that if you had a complaint or a problem, to put it in writing to us directly.

:rporate Headquarters
33 Hamilton Parkway
asca, IL 60143
30) 285-0500

inois
:2 S Riverside Drive
ite 1580
icago IL 60606
:2) 559-1166

diana
98 Woodland Drive
dianapolis, IN 46278
:7) 870-8020

chigan
255 Country Club Drive
ite B -11
rmington Hills, MI 48331
18) 324-4600

'io
60 Lake Forest Drive
ite 218
cinnati, OH 45242
3) 563-5900

sconsin
00 Swenson Drive
te 575
ukesha, WI 53186
2) 798-8234

:p://www.pccval.com

PLAINTIFF'S
EXHIBIT
E

Right People... Right Time... Right Answers!

Technology Management Solutions

Earlier this week I spoke again with Alex and asked that a conference call be scheduled immediately. I have heard nothing.

Given the situation, we must request that a meeting be convened as soon as possible to review and resolve this matter. We have always acted in good faith with you in connection with this contract and we continue to do so by having John continuing to perform services in accordance to our agreement. Our contract remains for full time use of John Chirillo's services for the balance of this year. We are anxious to determine why there is any issue of any kind.

Please contact either me or my assistant Terry Lukasik (630-285-2552) so that we can schedule a meeting at the earliest possible date to resolve these issues.

I look forward to hearing from you.

Sincerely,

William Waas
Executive Vice-President

WRW:tl
Enc.
cc: Chuck Birmingham

> COMPUTER
· D/B/A VALCOM
▶N PARKWAY
     IL   60143

INVOICE #  BALANCE  DATE
2-245513    61894.48  5/31/00

Page:   1 of   1

CUSTOMER # 000000029120
MERCHANTWIRED.COM
115 W WASHINGTON STREET
INDIANAPOLIS   IN  46204

≡MERCHANTWIRED.COM
⁻ 115 W WASHINGTON STREET
◤TTN: DAVE CAMPBELL
≖ INDIANAPOLIS    IN   46204

3176857334

|  | AMOUNTS | TOTALS |
|---|---|---|
| 0000000000 |  | 61894.48 |

| TITY | DESCRIPTION |  |
|---|---|---|
| Agreement: 00019923   0   For: MERCHANTWIRED.COM | | |
|  | 115 W WASHINGTON STREET | |
| MONTHLY | | 37200.00 |
| Coverage Period: 4/24/00 to 5/28/00 | | |
|  | J. CHIRILLO $200/HR | 11011.00 |
| ≡.RS LABOR | D. HANSEN $154/HR | 600.00 |
| ≡5HRS LABOR | J. CHIRILLO $300/HR | 20.98 |
| ⌐RS OT LABOR | D. HANSEN EXPENSES | 1119.25 |
| ⁻ ISC EXPENSES-TOLLS/PARKING/MEALS | T. SHEPARDSON EXPENSES | |
| ⊤ ISC EXPENSES-MEAL/PARKING/TAXI/ | | 6622.0 |
| MILEAGE (1009 MILES @ $1/MI) | T. SHEPARDSON $154/HR | 1636.25 |
|  | T. SHEPARDSON $192.50/HR | 1925.00 |
| 3HRS LABOR | D. HANSEN $192.50/HR | 1760.00 |
| .5HRS OT LABOR | J. MACEK $110/HR | |
| )HRS OT LABOR | | |

)HRS LABOR

NTACT PERSON:     SHANNON MORRIS
'OJECT OVERVIEW:  PRE-SALES SUPPORT
IGINEERS:         TOM SHEPARDSON, DANEYON HANSEN, JOHN CHIRILLO AND JOHN MACEK

    OJECT MANAGER:      BRIAN ROYE/RICARDO WINTERSTEIN
    :COUNT MANAGER:    TIM GOSS

| SUB TOTAL | 61894.48 |
|---|---|
| TOTAL TAX | 0.00 |
| TOTAL AMOUNT | 61894.48 |

FED ID # :

PROFESSIONAL. COMPUTER
CENTER, INC. D/B/A VALCOM
1433 HAMILTON PARKWAY
ITASCA        IL    60143

6302850606

MERCHANTWIRED.COM
115 W WASHINGTON STREET
ATTN: DAVE CAMPBELL
INDIANAPOLIS    IN    46204

0000000000

CUSTOMER #  000000029120
MERCHANTWIRED.COM
115 W WASHINGTON STREET
INDIANAPOLIS    IN  46204

3176857334

| QUANTITY | DESCRIPTION | AMOUNTS | TOTALS |
|---|---|---|---|
| Agreement: 00019923   0   For: MERCHANTWIRED.COM | | | 61894.48 |
| MONTHLY              115 W WASHINGTON STREET | | | |
| Coverage Period: 4/24/00 to 5/28/00 | | | |
| 86HRS LABOR | J. CHIRILLO $200/HR | | 37200.00 |
| 71.5HRS LABOR | D. HANSEN $154/HR | | 11011.00 |
| HRS OT LABOR | J. CHIRILLO $300/HR | | 600.00 |
| ISC EXPENSES-TOLLS/PARKING/MEALS | D. HANSEN EXPENSES | | 20.98 |
| ISC EXPENSES-MEAL/PARKING/TAXI/ | T. SHEPARDSON EXPENSES | | 1119.25 |
| MILEAGE (1009 MILES @ $1/MI) | | | |
| 3HRS LABOR | T. SHEPARDSON $154/HR | | 6622.0 |
| .5HRS OT LABOR | T. SHEPARDSON $192.50/HR | | 1636.25 |
| )HRS OT LABOR | D. HANSEN $192.50/HR | | 1925.00 |
| )HRS LABOR | J. MACEK $110/HR | | 1760.00 |

INTACT PERSON:     SHANNON MORRIS
'OJECT OVERVIEW:   PRE-SALES SUPPORT
IGINEERS:          TOM SHEPARDSON, DANEYON HANSEN, JOHN CHIRILLO AND JOHN MACEK

OJECT MANAGER:     BRIAN ROYE/RICARDO WINTERSTEIN
:COUNT MANAGER:    TIM GOSS

FED ID # :

| | |
|---|---|
| SUB TOTAL | 61894.48 |
| TOTAL TAX | 0.00 |
| TOTAL AMOUNT | 61894.48 |

.SIONAL COMPUTER
ER, INC. D/B/A VALCOM
.53 HAMILTON PARKWAY
ITASCA        IL    60143

6302850606

TENANTCONNECT.NET
115 W WASHINGTON STREET
ATTN: DAVE CAMPBELL
INDIANAPOLIS    IN   46204

3172630743

CUSTOMER #  000000029120
MERCHANTWIRED.COM
115 W WASHINGTON STREET
INDIANAPOLIS   IN  46204

3176857334

| QUANTITY | DESCRIPTION | AMOUNTS | TOTALS |
|---|---|---|---|
| Agreement: 00019680   0   For: TENANTCONNECT.NET | | | 96605.36 |
| MONTHLY              115 W WASHINGTON STREET | | | |
| Coverage Period:  3/06/00 to 4/22/00 | | | |
| 98HRS LABOR - 3/27-4/21 | B. ROYE $110/HR | | 10780.00 |
| 135.75HRS LABOR - 3/6-3/10, 3/27-4/21 | J. CHIRILLO $200/HR | | 27150.00 |
| 134.5HRS LABOR - 3/28-4/20 | D. HANSEN $154/HR | | 20713.00 |
| SEE ATTACHED RECEIPTS | B. ROYE EXPENSES | | 232.83 |
| EE ATTACHED RECEIPTS | D. HANSEN EXPENSES | | 857.50 |
| EE ATTACHED RECEIPTS | T. SHEPARDSON EXPENSES | | 2880.36 |
| 97HRS LABOR - 4/4-4/22 | R. MCCOLLUM $110/HR | | 10670.00 |
| .5HRS OT LABOR | R. MCCOLLUM $137.50/HR | | 1031.25 |
| 15.25HRS LABOR - 3/27-4/17 | T. SHEPARDSON $154/HR | | 17835.12 |
| 0.25HRS OT LABOR | T. SHEPARDSON $192.50/HR | | 1973.13 |
| .5HRS OT LABOR | D. HANSEN $192.50/HR | | 1443.75 |
| EE ATTACHED RECEIPTS | R. MCCOLLUM EXPENSES | | 1038.42 |

PROFESSIONAL COMPUTER
CENTER, INC. D/B/A VALCOM
1433 HAMILTON PARKWAY
ITASCA          IL    60143

6302850606

INVOICE #  BALANCE  DATE
2-245017    96605.36  4/28/00

Page:   2 of   2

TENANTCONNECT.NET
115 W WASHINGTON STREET
ATTN: DAVE CAMPBELL
INDIANAPOLIS    IN   46204

3172630743

CUSTOMER #  000000029120
MERCHANTWIRED.COM
115 W WASHINGTON STREET
INDIANAPOLIS    IN  46204

3176857334

| QUANTITY | DESCRIPTION | | AMOUNTS | TOTALS |
|---|---|---|---|---|

CONTACT PERSON:  SHANNON MORRIS
PROJECT OVERVIEW: PRE-SALES SUPPORT
ENGINEERS:      ROGER MCCOLLUM, BRIAN ROYE, TOM SHEPARDSON, DANEYON HANSEN,
                JOHN CHIRILLO

PROJECT MANAGER:  BRIAN ROYE/ROGER MCCOLLUM
ACCOUNT MANAGER:  TIM GOSS

FED ID # :

| | |
|---|---|
| SUB TOTAL | 96605.36 |
| TOTAL TAX | 0.00 |
| TOTAL AMOUNT | 96605.36 |

PROFESSIONAL COMPUTER
CENTER, INC. D/B/A VALCOM
1433 HAMILTON PARKWAY
ITASCA          IL     60143

6302850606

INVOICE #   BALANCE   DATE
2-245889    26300.00  6/29/00

Page:   1 of   1

MERCHANTWIRED.COM
115 W WASHINGTON STREET
ATTN: DAVE CAMPBELL
INDIANAPOLIS    IN    46204

CUSTOMER #  000000029120
MERCHANTWIRED.COM
115 W WASHINGTON STREET
INDIANAPOLIS    IN    46204

0000000000

3176857334

| QUANTITY | DESCRIPTION | AMOUNTS | TOTALS |
|---|---|---|---|
| | Agreement: 00020092  0   For: MERCHANTWIRED.COM | | 26300.00 |
| | MONTHLY                115 W WASHINGTON STREET | | |
| | Coverage Period: 5/29/00 to 6/23/00 | | |
| | Billing Info:   1 of   1 | | |
| | | | |
| 51.50HRS LABOR | J. CHIRILLO $200/HR | | 26300.00 |

NTACT PERSON:     BOB COVINGTON
OJECT OVERVIEW:   ON-SITE SUPPORT
GINEER:           JOHN CHIRILLO

OJECT MANAGER:    RICARDO WINTERSTEIN
COUNT MANAGER:    TIM GOSS

FED ID # :

| | |
|---|---|
| SUB TOTAL | 26300.00 |
| TOTAL TAX | 0.00 |
| TOTAL AMOUNT | 26300.00 |



August 10, 2000

VIA FEDERAL EXPRESS

Mr. Robert Covington
Merchant Wired
115 West Washington Street
Indianapolis, IN 46204

Dear Mr. Covington:

As you know, our Executive Vice-President, Bill Waas, sent you a letter on behalf of ValCom on July 12, 2000 with regard to the outstanding amounts owed in connection with the contract between ValCom and Clix 'n Mortar.com dated January 20, 2000 for the services of John Chirillo, for the calendar year 2000. We have heard nothing from you.

I am enclosing another copy of the letter from Mr. Waas which details the situation. I also enclose a copy of our most recent invoice for John Chirillo's services, which increases the outstanding amount to a total of $114,650.00.

While Bill Waas has spoken with Alex Carol, Bill advised Alex that we needed to hear directly from you as to any issues you might have. We still have had no word from you nor have we received any written communication outlining any potential issues arising out of John's services. By your lack of response, we must assume there are none.

Frankly, we see no reason why payment has not been made. Mr. Chirillo continues to perform services on behalf of Clix and will do so throughout the term of the contract.

We are requesting one last time that payment be made immediately and should you wish to set up a meeting to discuss the matter, I will be pleased to talk with you to see if the situation can be resolved. We will expect a response from you within five (5) business days of this letter.

Your prompt attention will be appreciated.

Sincerely,

Charles M. Birmingham
President

Enc.
cc: Bill Waas

Corporate Headquarters
1433 Hamilton Parkway
Itasca, IL 60143
(630) 285-0500

Illinois
222 S Riverside Drive
Suite 1580
Chicago IL 60606
(312) 559-1166

Indiana
8098 Woodland Drive
Indianapolis, IN 46278
(317) 870-8020

Michigan
39255 Country Club Drive
Suite 8-11
Farmington Hills, MI 48331
(248) 324-4600

Ohio
4460 Lake Forest Drive
Suite 218
Cincinnati, OH 45242
(513) 563-5900

Wisconsin
2900 Swenson Drive
Suite 575
Waukesha, WI 53186
(262) 798-8234

http://www.pccval.com

PLAINTIFF'S
EXHIBIT
F

Right People... Right Time... Right Answers!

Technology Management Solutions

PROFESSIONAL COMPUTER
CENTER, INC. D/B/A VALCOM
1433 HAMILTON PARKWAY
ITASCA        IL    60143

6302850606

INVOICE #  BALANCE  DATE
2-246313   23400.00  7/28/00

Page:  1 of  1

MERCHANTWIRED.COM                   CUSTOMER #  000000029120
115 W WASHINGTON STREET             MERCHANTWIRED.COM
ATTN: DAVE CAMPBELL                 115 W WASHINGTON STREET
INDIANAPOLIS    IN   46204          INDIANAPOLIS    IN  46204

0000000000                          3176857334

| QUANTITY | DESCRIPTION | AMOUNTS | TOTALS |
|---|---|---|---|
| | Agreement: 00020244  0  For: MERCHANTWIRED.COM | | 23400.00 |
| | MONTHLY              115 W WASHINGTON STREET | | |
| | Coverage Period: 6/26/00 to 7/21/00 | | |
| | Billing Info:  1 of  1 | | |
| 114HRS LABOR | J. CHIRILLO $200/HR | | 22800.00 |
| 2HRS LABOR | J. CHIRILLO $300/HR | | 600.00 |

CONTACT PERSON:   BOB COVINGTON
PROJECT OVERVIEW: ON-SITE SUPPORT
ENGINEER:         JOHN CHIRILLO

PROJECT MANAGER:  RICARDO WINTERSTEIN
ACCOUNT MANAGER:  TIM GOSS

FED ID # :

| | |
|---|---|
| SUB TOTAL | 23400.00 |
| TOTAL TAX | 0.00 |
| TOTAL AMOUNT | 23400.00 |



August 29, 2000

VIA FEDERAL EXPRESS

Mr. Richard Sokolov, President
Simon Property Group, Inc.
115 West Washington Street
Indianapolis, IN 46204

Mr. James Giuliano, C.E.O.
MerchantWired
115 West Washington Street
Indianapolis, IN 46204

Re: ValCom contract with ClixnMortar.com

Gentlemen:

As you may be aware, our company, ValCom, provides certain technology management services for ClixnMortar.com ("Clix") and its related companies. Per a written contract, a copy of which is enclosed, we have been providing and continue to provide the full time services of our employee John Chirillo, for calendar year 2000. The contract states at page 3, that "Clix'nMortar.com will commit to maintaining John Chirillo as a full time billable resource..." through December 31, 2000. The normal billing rate of $200 was applied.

The specific services that Mr. Chirillo provides have been under the direction of Bob Covington.

For many months we were under the impression that Mr. Covington was quite pleased with the services provided by Mr. Chirillo. In fact, when in April of this year, we sought to review Mr. Chirillo's time for March at the request of Alex Carol, then a consultant for Clix, Mr. Covington responded via email telling us not to pursue it, that he was in direct communication with Chirillo and everything was fine.

All further attempts on our part to follow up with Mr. Covington on the performance of Mr. Chirillo were ignored. Not only were there no complaints, but when my Executive Vice President, Bill Waas met with Mr. Covington in July, no problems of any kind were raised as to Mr. Chirillo's services.

**Corporate Headquarters:**
1433 Hamilton Parkway
Itasca, IL 60143
630.285.0500

**Illinois:**
222 South Riverside Drive
Suite 1580
Chicago, IL 60606
312.559.1166

**Indiana:**
8098 Woodland Drive
Indianapolis, IN 46278
317.870.8020

**Michigan:**
39255 Country Club Drive
Suite B-11
Farmington Hills, MI 48331
248.324.4600

**Ohio:**
4460 Lake Forest Drive
Suite 218
Cincinnati, OH 45242
513.563.5900

**Wisconsin:**
2900 Swenson Drive
Suite 575
Waukesha, WI 53186
262.798.8234

PLAINTIFF'S
EXHIBIT
G

Right People... Right Time... Right Answers!

**Technology Management Solutions**

I am addressing this letter to you in that we have outstanding invoices for Mr. Chirillo's services that have not been paid since March, 2000 and the contract still continues. I am enclosing copies of the invoices totaling $151,550.00. We had received in July for the first time, a telephone call from Alex Carol, now a vice president of Merchant Wired, indicating that beginning for April, 2000, the invoices under this contract would not be paid. We requested written notice of any complaints and we have received nothing. We have written Bob Covington on July 13, 2000 and again on August 10, 2000 (a copy of the letter is enclosed) and have received no response.

We have a contract for one year to provide John Chirillo's full time services. Mr. Chirillo remains under our employ, we continue to pay him, and he continues to be at your service. We have been unable to use Mr. Chirillo for any other projects as he is committed to your company for the year 2000. We have no specific complaints and absolutely nothing in writing. Having ignored our requests and being unable to obtain a response from Mr. Covington, who had told us that he would handle the relationship with Chirillo, we have no specific knowledge as to why the invoices remain unpaid.

It is our desire to have the invoices paid promptly and to resume our previously strong relationship with Clix. We have no interest in escalating this dispute to outside counsel, but we are running out of options.

I look forward to prompt receipt of the amounts outstanding and I would be pleased to speak with you at your first convenience.

Sincerely,

Charles M. Birmingham
President

cc: Robert Covington (w/o enc)
    Alex Carol (w/o enc)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Professional Computer Center, Inc.,
d/b/a ValCom, an Illinois corporation

## DEFENDANTS

Simon Property Group Delaware, Inc., a Delaware corporation, Clixnmortar.com, Inc., a Delaware corporation, and Merchantwired, LLC, f/k/a Tenantconnect.net LLC, a Delaware Limited Liability Company

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  DuPage
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

JUDGE LINDBERG

MAGISTRATE JUDGE BOBRICK

00 C 7729

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

ATTORNEYS (IF KNOWN)
Thomas P. McNulty
Jones, Day, Reavis & Pogue
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601
(312) 782-3939

**DOCKETED**

DEC 11 2000

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C. Section 1441. The action is wholly between citizens of different states and the amount in controversy is greater than $75,000.

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

## VIII. This case

☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

**FILED**

DATE
12/7/00

SIGNATURE OF ATTORNEY OF RECORD
Thomas P. McN

DEC - 8 2000

UNITED STATES DISTRICT COURT

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# FILED

DEC - 8 2000

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

In the Matter of

Professional Computer Center, Inc., d/b/a ValCom,
an Illinois corporation,
                                    Plaintiff,

v.

Simon Property Group Delaware, Inc., a Delaware corporation,
Clixnmortar.com, Inc. a Delaware corporation, and Merchantwired, LLC,
f/k/a Tenantconnect.net LLC, a Delaware Limited Liability Company,
                                    Defendants,

Case Number: **00C 7723**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

**DOCKETED**

DEC 1 1 2000

**JUDGE LINDBERG**

**MAGISTRATE JUDGE SCHENKIER**

| (A) | (B) |
|---|---|
| SIGNATURE *Thomas P. McNulty* | SIGNATURE *Stacy A. Baim* |
| NAME Thomas P. McNulty | NAME Stacy A. Baim |
| FIRM Jones, Day, Reavis & Pogue | FIRM Jones, Day, Reavis & Pogue |
| STREET ADDRESS 77 West Wacker Drive, Suite 3500 | STREET ADDRESS 77 West Wacker Drive, Suite 3500 |
| CITY/STATE/ZIP Chicago, Illinois 60601 | CITY/STATE/ZIP Chicago, Illinois 60601 |
| TELEPHONE NUMBER (312) 782-3939 — FAX NUMBER (312) 782-8585 | TELEPHONE NUMBER (312) 782-3939 — FAX NUMBER (312) 782-8585 |
| E-MAIL ADDRESS tpmcnulty@jonesday.com | E-MAIL ADDRESS sabaim@jonesday.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6200561 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6257018 |
| MEMBER OF TRIAL BAR? YES ☒ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☒ |
|  | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☒ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER — FAX NUMBER | TELEPHONE NUMBER — FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |